### In re 765 ASSOCIATES dba "Pirates Cove Restaurant" and dba "Funatei Restaurant", Debtor.

### No. 80–00064.

United States Bankruptcy Court, D. Hawaii.

July 20, 1982.

---

Patrick Taomae, Honolulu, Hawaii, for debtor.

Jeffrey Taylor, Honolulu, Hawaii, for Kalfred Wong.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

Kalfred K. F. Wong filed herein a Proof of Claim on June 18, 1981, which claim has been designated as Proof of Claim Number 76. On September 23, 1981, 765 Associates dba "Pirates Cove Restaurant" and dba "Funatei Restaurant", Debtor above-named, filed herein an Objection To Allowance of Claim (Proof of Claim No. 76).

A trial on said matter was held on March 29 and 30, 1982, at which time Jeffrey M. Taylor appeared on behalf of Kalfred Wong and Patrick Y. Taomae represented the Debtor.

Based upon the records and files herein, the memoranda and arguments submitted by counsel, the testimony given by witnesses, and the exhibits admitted into evidence, and the Court being otherwise fully advised in the premises, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Kalfred K. F. Wong ("Wong"), Peter Moix ("Moix") and Robert Munson ("Munson") are and were at all times relevant hereto residents of the City and County of Honolulu, State of Hawaii.

2. Patrick M. Haskins ("Haskins") was at all times relevant hereto a resident of the City and County of Honolulu, State of Hawaii.

3. 765 Associates is a limited partnership that was formed on or about November 22, 1978, with David D. Bergan ("Bergan") as the general partner and Russell L. Jones ("Jones") and Haskins as the limited partners. 765 Associates was created for the express purpose of investing in real estate and other properties and was initially located at 765 Kamehameha Highway, Pearl City, Hawaii. It subsequently became located at 2005 Kalia Road, Honolulu, Hawaii in early 1979.

4. In December of 1978, Haskins, Moix and Munson agreed to form a partnership for the purpose of purchasing, or at least obtaining an interest in, a restaurant known as Pirates Cove located in the Rainbow Bazaar of the Hilton Hawaiian Village.

5. As a result, at about that time, Moix approached Wong who was a former business associate and personal friend of Moix, in an effort to ascertain whether Wong was interested in becoming a limited partner of the proposed partnership.

6. Wong declined to become a limited partner of the proposed partnership, but instead agreed to make a loan to Moix, Munson, and Haskins in order for them to purchase, or at least obtain an interest in the Pirates Cove restaurant through the proposed partnership.

7. In January of 1979, Wong therefore obtained a loan from the Hickam Federal Credit Union in the amount of $50,000.00, which was in the form of a check made payable to Wong and which was secured by a second mortgage on his residence. Said amount of $50,000.00 was to be in turn loaned to Moix, Munson, and Haskins as aforementioned.

8. On or about January 18, 1979, Wong went to the office of Valhalla, Ltd., a Hawaii corporation wholly owned by Haskins and located at 765 Kamehameha Highway, Honolulu, Hawaii. At that time Wong

turned over the amount of $50,000.00 to Haskins, Moix, and Munson, each of whom were present at that time, by endorsing the check issued to him by the Hickam Federal Credit Union. Although the identity of the endorsee of the check is not known, it is clear that 765 Associates was not the endorsee of the check.

9. Upon turning over said amount of $50,000.00 to Haskins, Moix, and Munson, Wong did not receive a receipt or other written documentation evidencing the loan, with the exception of a promissory note (hereinafter "Promissory Note") dated January 18, 1979 at Honolulu, Hawaii, which was signed by Wong, as payee, and Haskins, Moix, Munson, Mary H. Moix, and Francis A. Munson, as makers (hereinafter "Makers"), the latter two of which were the wives of Moix and Munson, respectively. Wong testified that he insisted that the wives also sign the promissory note because he wanted to proceed against the properties held as tenants by the entirety in the event of default.

10. At the time of the transaction on January 18, 1978, there was no mention at all that the $50,000.00 was being borrowed on behalf of 765 Associates.

11. Under the Promissory Note, the Makers promised to pay Wong equal installments of interest only in the amount of $875.00 on or about the first day of each month commencing February 1, 1979 and ending July 18, 1980, with the principal sum of $50,000.00 due and payable at the termination of the Promissory Note or earlier at the option of the Makers, in which instance interest would be pro-rated accordingly.

12. Wong had no personal knowledge of what was done with the amount of $50,-000.00 which he turned over to Haskins, Moix, and Munson. There is some evidence that said amount of $50,000.00 was deposited into a 765 Associates checking account on or about January 19, 1979 through a check issued by Valhalla, Ltd. in the total amount of $155,000.00.

13. The proposed partnership among Moix, Munson, and Haskins was never formed. Instead, on February 5, 1979, through the filing of a Certificate of Amendment of Limited Partnership with the Department of Regulatory Agencies of the State of Hawaii, Haskins, Moix, and Munson, together with Michael T. Perry ("Perry") were added as general partners of 765 Associates, while Bergan withdrew as a general partner and Haskins withdrew as a limited partner, thereof. At that time, 765 Associates had either already obtained or intended to obtain an interest in the Pirates Cove restaurant.

14. Subsequently, interest payments under the Promissory Note in the amount of $875.00 each were from time to time paid to or for the benefit of Wong by (1) Moix, Munson, and/or Haskins, (2) Valhalla, Ltd., and (3) 765 Associates and Pirates Cove, which said interest payments were made during the period from February of 1979 up to April or May of 1980.

15. For instance, Moix, Munson, and/or Haskins made periodic payments to Wong in the amount of $875.00. Further, Valhalla, Ltd. issued three (3) checks to the Hickam Federal Credit Union on behalf of Wong in the amount of $875.00 each, which said checks were dated June 5, 1979, June 13, 1979, and August 1, 1979. Lastly, 765 Associates issued similar checks directly to Wong dated September 3, 1979, October 2, 1979, and December 1, 1979, the address on said checks being 765 Kamehameha Highway, while Pirates Cove issued similar checks dated November 9, 1979, February 1, 1980 and February 29, 1980, Pirates Cove being the dba of 765 Associates and located at 2005 Kalia Road. During the period covering the issuance of the foregoing checks, Haskins simultaneously controlled the checking account of Valhalla, Ltd., 765 Associates, and Pirates Cove and often treated the same as one account or as his personal account.

16. On April 30, 1979, by Certificate of Amendment of Limited Partnership, Moix and Munson withdrew as general partners.

17. 765 Associates filed herein a Voluntary Petition Under Chapter 11 on February 1, 1980, and an Amended Voluntary

Petition Under Chapter 11 on February 4, 1980. 765 Associates continued to operate its business and manage its property as a debtor-in-possession. It is noted that when 765 Associates filed its Schedule A–3 shortly thereafter, Wong was not listed thereon as an unsecured creditor of 765 Associates.

18. After Wong stopped receiving monthly interest payments of $875.00 from Pirates Cove in April or May of 1980, he consulted an attorney, Ronald G. S. Au, in an effort to seek repayment of the amount of $50,000.00 loaned by him to Haskins, Moix and Munson.

19. Consequently, on or about June 21, 1980, Wong, Moix, and Munson entered into an Agreement to Reimburse, wherein and whereby Moix and Munson agreed to pay to Wong the total of $50,875.00, which included the principal sum of $50,000.00 plus unpaid interest in the amount of $875.00, as follows:

$10,875.00 by June 26, 1980

$20,000.00 by August 1, 1980

$20,000.00 by September 1, 1980

Moix and Munson also agreed to pay all attorney's fees and costs in these bankruptcy proceedings incurred by Wong.

19. In consideration thereof, Wong agreed to prosecute for collection the Promissory Note in these bankruptcy proceedings. Wong further agreed that if he did collect on the Promissory Note from 765 Associates and Haskins in these bankruptcy proceedings, he would turn over any funds so collected to Moix and Munson.

20. Moix and Munson did pay the total amount of $50,875.00 to Wong pursuant to and in compliance with the Agreement to Reimburse. However, Wong did nothing to prosecute for collection the Promissory Note as he had agreed as aforesaid. Instead, it was Haskins who subsequently sought to include Wong as an unsecured creditor of 765 Associates on Schedule A–3 theretofore filed by 765 Associates. In fact, Jeffrey M. Taylor (hereinafter "Taylor"), the then attorney for Moix and Munson, made inquiries of 765 Associates as to when Wong would be so listed as an unsecured creditor of 765 Associates.

21. Consequently, on September 29, 1980, 765 Associates filed herein an Application For Leave to Amend Schedule A–3, therein requesting, *inter alia*, that since 765 Associates inadvertently neglected to include Wong on Schedule A–3, Schedule A–3 be amended to include Wong as an unsecured creditor in the amount of $50,000.00. On the same date, the Court entered an Order Granting Leave to Amend Schedule A–3, therein granting 765 Associates leave to amend Schedule A–3 so as to include Wong on Schedule A–3 and further ordering that since Wong's claim against 765 Associates was not listed as disputed, contingent, or unliquidated, Wong may, but need not, file a proof of claim in these proceedings. On September 29, 1980, Schedule A–3 was in fact amended to include Wong as an unsecured creditor of 765 Associates in the amount of $50,000.00, which said amendment was sworn to under oath by Haskins on behalf of 765 Associates.

22. On May 29, 1981, the Court entered an Order Approving Disclosure Statement, Combined with Notice Regarding Debtor's Chapter 11 Plan of Reorganization, where it is stated that "June 15, 1981 is fixed as the last day for filing a proof of claim...."

23. On June 18, 1981, Wong filed herein a proof of claim through his attorney, Taylor, whom Wong retained in early 1981. Said proof of claim, which was designated as number 76, asserted therein a general unsecured claim against the Debtor in the amount of $50,000.00 for monies lent and was alleged to be based on the Promissory Note executed by Haskins, Moix, and Munson, and the wives of Moix and Munson.

24. On June 24, 1981, an Order was entered confirming Debtor's plan of reorganization, which called for payments to unsecured creditors of thirty per cent (30%) of their claims.

25. Under the plan, the first payment of seven and a half per cent (7½%) was to be made thirty (30) days after confirmation, and an additional seven and a half (7½%) was to be paid every thirty (30) days there-

after until fully paid as provided under the plan. Thus, the first payment was due July 25, 1981 and the second payment was due August 25, 1981.

26. 765 Associates did not make any payment to Wong. Instead, it filed an Objection to Allowance of Claim (Proof of Claim No. 76) on September 23, 1981, objecting to the allowance of Wong's claim against 765 Associates on the grounds that (1) the claim was not timely filed, (2) the Debtor was not liable for the satisfaction of the claim, and (3) the claim has been fully satisfied.

27. At the trial on March 29, 1982, the Court ruled that the proof of claim of Kalfred K. F. Wong was deemed filed since the Order of May 29, 1981 was ambiguous. Therefore, the issue before this Court is whether or not the Debtor is liable for the satisfaction of Proof of Claim Number 76.

28. To the extent that the foregoing Findings of Fact constitute Conclusions of Law, they shall be so considered.

## CONCLUSIONS OF LAW

1. When Wong turned over his check of $50,000.00 to Moix, Munson and Haskins at the office of Valhalla, Ltd. on January 18, 1979, he received in return a promissory note signed by Moix, Munson and Haskins as makers and Wong as payee. Wong made the loan to Moix, Munson and Haskins because he was a personal friend of Moix.

2. After the initial note was received, Wong insisted that the wives of the makers also sign the note. Thus, at a subsequent date, Mrs. Moix and Mrs. Munson signed the note. Wong testified that he wanted the wives to sign because he wanted to proceed against the properties held as tenants by the entireties in the event of default. It is clear that when Wong accepted the note, he accepted the note as that of Moix, Munson and Haskins and not as a partnership obligation of 765 Associates.

3. At the time of the transaction on January 18, 1979, the partnership 765 Associates was in existence. Haskins was then a limited partner of 765 Associates. Moix and Munson were not members of the partnership. Thus, none of the three had the authority to borrow on behalf of 765 Associates.

4. The evidence shows that Haskins owned Valhalla, Ltd. The evidence also shows that on February 5, 1979, Haskins, Moix and Munson, along with Perry, were added as general partners of 765 Associates. Bergan withdrew as general partner and Haskins withdrew as a limited partner. Then, on April 30, 1979, Moix and Munson withdrew as general partners of 765 Associates. The evidence further shows that Haskins used the funds of Valhalla, Ltd., and 765 Associates as though they were his own.

5. After the execution of the promissory note, the first interest payments were made jointly by Moix, Munson and Haskins, even though 765 Associates was in existence. Then, several interest payments were made through the checks of Valhalla, Ltd. owned by Haskins. The checks were dated June 5, June 13 and August 1, 1979, all after Moix and Munson had withdrawn from 765 Associates. Then, thereafter, until the petition in bankruptcy of 765 Associates was filed on February 1, 1980, the checks to Wong were issued by 765 Associates and Pirates Cove, which was the dba of 765 Associates, both controlled by Haskins.

6. After the Petition had been filed and when Wong did not receive the interest payments pursuant to the promissory note, Wong sought the advise of counsel who recommended that Wong pursue the makers. As a result, Wong confronted Moix upon whom he had relied upon for payments.

7. The original schedule did not list Wong as an unsecured creditor. After Wong, Moix and Munson entered into the Agreement to Reimburse on June 21, 1980, Wong made no effort to collect on the promissory note to reimburse Moix and Munson. It was Haskins, one of the original co-makers of the note and Taylor, the then attorney for Moix and Munson, who sought to have Wong listed as an unsecured creditor. As a result, on September 29, 1980, Wong was listed as an unsecured cred-

itor with a claim of $50,000.00 by Haskins who is one of those personally liable on the promissory note.

8. The foregoing shows that Wong was not a creditor of 765 Associates but was a creditor of Moix, Munson and Haskins. Haskins listed Wong as a creditor of 765 Associates upon the insistence of Moix and Munson and Taylor and as a means to avoid personal liability on the promissory note.

9. It appears that the sum of $50,000.00 turned over to Moix, Munson, and Haskins by Wong could have been turned over to 765 Associates by a check of Valhalla, Ltd.

10. However, the note on which Wong relies for his Proof of Claim reflects the individual obligations of Moix, Munson, and Haskins, along with Mrs. Moix and Mrs. Munson. The note was never accepted by Wong on the credit of the partnership. Wong always looked to Moix, Munson and Haskins for payment of the note.

11. The transactions subsequent to the making and delivery of the note on January 18, 1979 are not sufficient to make the note a partnership obligation. A new note from 765 Associates to Wong was never executed to replace the note of January 18, 1979. None of the general partners informed Wong that 765 Associates had assumed the obligation under the note. Haskins as the general partner of 765 Associates dba Pirates Cove, and being one of the obligors under the note, treated 765 Associates as his own and directed the Treasurer of 765 Associates or Pirates Cove to issue the checks to Wong.

12. In the case of *Meyer v. Linch*, 145 Neb. 1, 15 N.W.2d 317 (1944), a suit was brought against a partnership where it was alleged that one of the partners had borrowed money on a note which he had personally signed and wherein the partnership received the consideration from the note. The Court held that it was not sufficient to show that the consideration of the note was advanced to the partnership. The note must also be accepted by the payee on the credit of the partnership.

13. In the instant case, Wong accepted the note on the credit of Mr. and Mrs. Moix, Mr. and Mrs. Munson and Mr. Haskins. Wong did not accept the note on the credit of 765 Associates. Furthermore, it is not clear as to where the $50,000.00 from Wong ultimately went or for what purpose it was used.

14. Wong was paid by Moix and Munson who were two of the makers of the note. Being paid in full by the obligors of the note, Wong has no claim against 765 Associates, which was not a party to the note.

Let Judgment be entered accordingly.